# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 16-01460-JW |
| | Chapter 13 |
| LaDeidra Antoinette Berry, | **ORDER** |
| Debtor(s). | |

This matter comes before the Court upon the Motion to Determine Award of Attorney's Fees and Application for Fees Pursuant to the Equal Access to Justice Act ("Motion") filed by LaDeidra Antoinette Berry ("Debtor"), which seeks an award of attorney's fees and costs under 11 U.S.C. § 105 and the Equal Access to Justice Act.[1] Pennsylvania Higher Education Assistance Agency d/b/a FedLoan Servicing ("FedLoan Servicing") filed a response to the Motion, and a hearing was held on the matter.[2] The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334. Pursuant to Fed. R. Civ. P. 52, which is made applicable to this matter pursuant to Fed. R. Bankr. P. 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law.[3]

## **FINDINGS OF FACT**

1.  Debtor is obligated on a student loan ("Debtor's Loan") held by the United States Department of Education ("DOE") and serviced by its agent FedLoan Servicing.

---

[1] Further references to the United State Bankruptcy Code (11 U.S.C. § 101, *et al.*) shall be by section number only.

[2] Despite being named as a party, the United States Department of Education (the "DOE") did not file an objection to the Motion.

[3] To the extent the following findings of fact are conclusions of law, they are adopted as such, and to the extent the following conclusions of law are findings of fact, they are so adopted.

1

2. In order to pay Debtor's Loan, prior to filing the above-captioned case, and continuing at times post-petition, Debtor was enrolled in both the Public Service Loan Forgiveness Program ("PSLF Program"), which allow a borrower employed full-time in a public service position to obtain forgiveness of student loan debt after making 120 monthly payments, and an income-driven repayment plan ("IDR"), which permits a student loan borrower to make payments in amounts based on the income earned by the borrower.[4]

3. On March 25, 2016, Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code.

4. Upon receiving notice of Debtor's bankruptcy case, FedLoan Servicing placed Debtor's Loan in an administrative forbearance. Upon placing the loan in forbearance, FedLoan Servicing stopped collection efforts against Debtor, and discontinued applying Debtor's payments in accordance with the PSLF Program or her IDR plan.

5. On March 25, 2016, Debtor proposed a chapter 13 plan ("First Plan"), which provided the following treatment for Debtor's Loan:

> F. Student Loan Claims: As indicated on Schedule J, the Debtor will pay this creditor directly, this creditor will not share in pro rata distribution from the Trustee: <u>Fed Loan Servicing</u>. If this claim is filed by any other entity or account number: Debtor will be responsible to notify the Trustee or Trustee may make disbursement on the claim pursuant to IV.E. above.
>
> Debtor agrees that if she signs a certification of plan completion, she will be certifying that all contractual payments that came due to this creditor have been made through the date of certification.

(Emphasis added). Through this provision, it appears Debtor intended to maintain and continue her contractual student loan payments to FedLoan Servicing through direct payments and under

---

[4] The Court observes that the parties interchangeably use the term "income-based repayment plan" ("IBR") with the term "income-driven repayment plan." It is the Court's understanding that Debtor was enrolled in an IBR plan, which is a type of IDR plan.

2

the programs under which she had qualified and was performing at the time of the filing of her petition and the First Plan.

6. Debtor served the First Plan on FedLoan Servicing at PO Box 69184, Harrisburg, PA, 17106-9184, which is the same post office box that was indicated for notices in the proof of claim filed by FedLoan Servicing in this case.

7. After no objections were filed, the Court entered an Order Confirming the First Plan on May 9, 2016.

8. On June 14, 2016, FedLoan Servicing filed a proof of claim on behalf of the DOE, indicating that Debtor owed $97,009.87 on Debtor's Loan. The proof of claim indicated all notices and payments during the bankruptcy case should be sent to FedLoan Servicing.[5]

9. On July 27, 2016 and August 30, 2016, FedLoan Servicing responded by letters to concerns raised by Debtor's counsel that FedLoan Servicing was not complying with the terms of the confirmed First Plan, including timely crediting Debtor's payments towards the PSLF program and IDR plan.[6] The letter states the following in response to Debtor's inquiries:

> [Debtor's] request, as we understand it, is for information pertaining to the Public Service Loan Forgiveness (PSLF) program. Unfortunately, until we receive notice from the courts that the bankruptcy has concluded, her loans will not be eligible for the PSLF program. Per the Department's guidelines, qualifying payments must be made for the full scheduled monthly installment amount on an Income Driven Repayment Plan, a 10 year Standard Repayment Plan, or another Direct Loan Program repayment plan with an amount equal to that of a 10 year Standard Repayment Plan.
>
> Due to the active bankruptcy, Ms. Berry is not being billed for a monthly installment. Any payments made would be at her sole discretion and would not be a result of a required scheduled payment. Therefore, under the criteria from the Department, these payments would not count as qualifying payments. Once the

---

[5] The proof of claim indicated that notices should be sent to "U.S. Department of Education c/o FedLoan Servicing" at P.O. Box 69184, Harrisburg, PA 17106-9184.

[6] The August 30, 2016 letter was submitted into evidence by Debtor without objection.

3

bankruptcy concludes and billing resumes, Ms. Berry could continue to make qualifying payments.

10. In response, Debtor filed an amended plan on October 3, 2016 ("Second Plan"),[7] which provided the following treatment for Debtor's Loan:[8]

> F. Student Loan Claims: As indicated on Schedule J, the Debtor will pay this creditor directly; this creditor will not share in the pro rata distribution from the Trustee: <u>FedLoan Servicing</u>. If this claim is filed by any other entity or account number, Debtor will be responsible to notify the Trustee or Trustee may make disbursements on the claim pursuant to IV.E. above.
> Debtor agrees that if she signs a certification of plan completion, she will be certifying that all contractual payments that came due to this creditor have been made through the date of certification.
>
> The Debtor is not seeking nor does this Plan provide for any discharge, in whole or in part of her student loan obligations.
>
> *The Debtor shall be allowed to seek enrollment, or to maintain any pre-petition enrollment, in any applicable income-driven repayment ("IDR") plan with the U.S. Department of Education and/or other student loan servicers, guarantors, etc. (Collectively referred to hereafter as "Ed"), including but not limited to the Public Service Loan Forgiveness program, without disqualification due to her bankruptcy. Any direct payments made to the Debtor to Ed since the filing of her petition shall be applied to any IDR plan in which the Debtor was enrolled pre-petition, including but not limited to the Public Service Loan Forgiveness program.*
>
> Ed shall not be required to allow enrollment in any IDR unless the Debtor otherwise qualifies for such plan.
>
> The Debtor may, if necessary and desired, seek a consolidation of her student loans by separate motion and subject to subsequent court order.
>
> Upon determination by Ed of her qualification for enrollment in an IDR and calculation of any payment required under such by the Debtor, the Debtor shall, within 30 days, notify the Chapter 13 Trustee of the amount of such payment. At such time, the Trustee or the Debtor may, if necessary, file a Motion to Modify the

---

[7] The Second Plan included a coversheet which indicated, in bold font, the changes made to the First Plan, including "Amended to include additional language regarding the Debtor's student loan claims in Section IV.F."

[8] According to § 1329(b)(2), a confirmed plan may be modified and the plan as modified becomes the plan, unless the modification is disapproved. Therefore, for the purposes of this Order, the First Plan and Second Plan may be collectively referred to as the "Plan."

4

> Chapter 13 Plan to allow such direct payment of the student loan(s) and adjust the payment to other general unsecured claims as necessary to avoid any unfair discrimination.
>
> *The Debtor shall re-enroll in the applicable IDR annually or as otherwise required and shall, within 30 days following a determination of her updated payment, notify the Chapter 13 Trustee of such payment.* At such time, the Trustee or the Debtor, may if necessary file a Motion to Modify the Chapter 13 Plan to allow such direct payment of the student loan(s) and adjust the payment to other general unsecured claims as necessary to avoid any unfair discrimination.
>
> *During the pendency of any application by the Debtor to consolidate her student loans, to enroll in an IDR, direct payment of her student loans under an IDR, or during the pendency of any default in payment of the student loans under an IDR, it shall not be a violation of the stay or other State or Federal Laws for Ed to send the Debtor normal monthly statements regarding payments due and other communications including, without limitation, notices of late payments or delinquency. These communications may expressly include telephone calls and e-mails.*
>
> In the event of any direct payments that are more than 30 days delinquent, the Debtor shall notify her attorney, who will in turn notify the Chapter 13 Trustee, and such parties will take appropriate action to rectify the delinquency.
>
> The Debtor's attorney may seek additional compensation by separate applications and court order for services provided in connection with the enrollment and performance under an IDR.

(Emphasis added). It appears this plan provision was intended to more definitely describe Debtor's proposed treatment of Debtor's Loan to maintain her prepetition enrollment in the IDR plan and PSLF program via direct payments to FedLoan Servicing, as well as to permit her to apply for and requalify each year for those programs. It further provided for the application of all post-petition payments made to FedLoan Servicing directly by Debtor.

11. According to its certificate of service, the Second Plan was properly served on the United States Attorney for South Carolina,[9] the DOE,[10] the United States Department of Justice,[11] and FedLoan Servicing. The address listed for FedLoan Servicing was the same address that FedLoan Servicing listed for notices on the loan's proof of claim.

12. No objections were filed to the Second Plan, and on January 20, 2017, the Court entered an Order Confirming Plan.[12]

13. Also on January 20, 2017, Debtor filed a certificate of service, which indicated that the January 20, 2017 confirmation order was served on the FedLoan Servicing on behalf of the U.S. Department of Education at the address listed for notice in the proof of claim.

14. On April 27, 2017, Debtor filed a Motion to Enforce Plan ("Motion to Enforce"), which sought to enforce the Plan against FedLoan Servicing and the DOE as payments on Debtor's Loan were still not being applied in accordance with the terms of the confirmed plan. The Motion to Enforce also sought an award of attorney's fees and costs from FedLoan Servicing and the DOE.

15. On May 22, 2017, the DOE filed an Objection to the Motion to Enforce. However, FedLoan Servicing did not file an objection to the Motion to Enforce.

16. After the filing of the Motion to Enforce, Debtor's counsel received a letter dated June 15, 2017 from American Education Services,[13] which appears to be an entity related to FedLoan Servicing. The June 15, 2017 letter stated:

---

[9] Debtor served the United States Attorney for South Carolina at the Wells Fargo Building, 1441 Main Street, Suite 500, Columbia, S.C. 29201.

[10] Debtor served the U.S. Department of Education at 400 Maryland Avenue, SW, Washington D.C. 20202.

[11] Debtor served the U.S. Department of Justice at 950 Pennsylvania Avenue, NW, Washington D.C. 20530.

[12] For the purposes of this Order, the confirmation orders that confirmed the First Plan and Second Plan may be collectively referred to as the "Confirmation Order."

[13] The June 15, 2017 letter was admitted into evidence without objection.

6

> Because we did not receive a request for IDR recertification after receiving the [Notice of Meeting of Creditors], Ms. Berry's installment went from a Partial Financial Hardship (PFH) installment of $129.09 to a Permanent Standard installment of $897.97 on April 7, 2016. On May 24, 2017, Ms. Berry contacted our office regarding recertifying for the IDR plan. She was advised that the bankruptcy status must be ended before she may recertify her current IDR. Unfortunately, this information is not entirely accurate. Please accept our apologies for any confusion or inconvenience that this situation may have caused Ms. Berry.
>
> As long as Ms. Berry is only recertifying the current Income Based Repayment (IBR) plan, she may complete the enclosed application or recertify electronically . . . .

17.  On July 14, 2017, in response to certain discovery requests made by Debtor as part of the Motion to Enforce, FedLoan Servicing filed a Motion to Quash, in Part, Subpoena of Debtor.

18.  On August 29, 2017, the Court received and entered a Consent Order Resolving Motion to Enforce ("Consent Order"), which was agreed to by Debtor, FedLoan Servicing and the United States of America on behalf of the DOE. Therein, FedLoan Servicing and the DOE agreed to apply Debtor's post-petition payments to her IDR plan and the PSLF program, providing in part that "her loan balance will be recalculated accordingly including but not limited to removing any post-petition capitalization of interest" and "her payments as they were made to date will be accepted as if the payment amount due under the prior annual period continued to be in effect . . . ." The Consent Order expressly reserved Debtor's right to seek attorney's fees from the DOE and FedLoan Servicing under § 105, the Equal Access of Justice Act, and other statutes. The Consent Order also mooted FedLoan Servicing's Motion to Quash.

19.  On September 28, 2017, Debtor filed the Motion seeking an award of attorney's fees and costs from FedLoan Servicing and the DOE under § 105 and the Equal Access of Justice Act for the parties' failure to comply with the terms of the confirmed Plan.

20.  On October 19, 2017, FedLoan Servicing filed a response to the Motion. The DOE did not file a response to the Motion.

21. On October 23, 2017, Debtor filed correspondence with the Court indicating that she had reached a settlement with the DOE on the Motion. At the hearing on the Motion, it was indicated that the DOE agreed to pay Debtor $6,000 for her attorney's fees and costs.[14] This agreement was memorialized in a consent order entered by the Court. The consent order between Debtor and the DOE specifically provided that it constituted a full settlement between the DOE and Debtor only, and expressly recognized and preserved Debtor's right to pursue further relief against FedLoan Servicing.

22. Thereafter, the Court held a hearing on the Motion. At the hearing, Debtor sought relief under § 105.[15] At the hearing, a representative of FedLoan Servicing, Katelynn Bias, testified about Debtor's Loan and the guidelines regulating FedLoan Servicing's collection of the loan. After hearing arguments from the parties' counsels, the Court took the matter under advisement.

## **CONCLUSIONS OF LAW**

Debtor seeks an award of attorney's fees and costs under 11 U.S.C. § 105 for FedLoan Servicing's failure to comply with the terms of the confirmed Plan. Specifically, Debtor alleges that FedLoan Servicing failed to timely and properly apply payments in accordance with the confirmed Plan and Confirmation Order, which resulted in Debtor incurring attorney's fees and costs in connection with the filing of the Motion to Enforce, related negotiations and entry of the Consent Order, and the filing and arguing of the present Motion.

Section 105(a) of the Bankruptcy Code provides that:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court

---

[14] This amount appears to be approximately half of the attorney's fees and costs requested by the Debtor in her Motion ($12,574.80).

[15] Debtor's arguments under the Equal Access of Justice Act were mooted because she reached a settlement with the DOE.

> from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Both this Court and other courts have held that an award of attorney's fees under § 105 may be appropriate when a party violates the terms of a chapter 13 plan and the court's confirmation order. See, e.g., Fla. Dep't of Rev. v. Rodriguez (In re Rodriguez), 367 F. App'x 25 (11th Cir. 2010) (upholding a bankruptcy court's finding that an award of attorney's fees was appropriate when the State of Florida violated the terms of the debtor's confirmed plan and was in contempt of the confirmation order); In re Crawford, 532 B.R. 645, 655 (Bankr. D.S.C. 2015) ("[The Court's] authority to enforce its orders, including a confirmation order, under § 105(a) must necessarily include the ability to award fees to a debtor who is forced to bring an action, and thus incur attorney's fees, to compel a creditor's compliance with the binding plan and the order confirming the plan."); In re Ford, 522 B.R. 842, 848–49 (Bankr. D.S.C. 2015) (requiring a creditor to pay debtor's attorney's fees when the creditor's conduct constituted a violation of the confirmation order); FNB Bank v. Carlton (In re Carlton), C/A No. 10-40388-JJR-13, Adv. Pro. No. 10-40054-JJR, slip op., 2011 WL 3799885 (Bankr. N.D. Ala. Aug. 26, 2011) ("A willful violation of a chapter 13 confirmation order may be contemptuous, as it was in this case, and § 105(a) provides statutory authority for a bankruptcy court to award monetary sanctions to compensate a debtor for the resulting harm, and at the court's discretion, to further award attorney's fees incurred in successfully achieving enforcement of the offended order.").

Furthermore, the Court of Appeals for the Fourth Circuit has held that through § 105(a), Congress gave bankruptcy courts the statutory authority to hold parties in contempt for failing to comply with the Court's prior orders. See Burd v. Walters (In re Walters), 868 F.2d 665, 669 (4th Cir. 1989) ("We think an order holding [Debtor's counsel] in contempt for his failure to comply

9

with the previous order of the court was appropriate in carrying out the administration of the estate, and thus was authorized by 11 U.S.C. § 105(a)."); Workman v. GMAC Mortgage LLC (In re Workman), 392 B.R. 189, 194 (Bankr. D.S.C. 2007) (noting that "[b]ankruptcy courts within this Circuit have previously held creditors in civil contempt for violating a confirmation and a discharge order"). The District Court of South Carolina has held that "[i]t is clear from the very terms of [§ 105(a)] that Congress gave the Bankruptcy Court broad inherent discretionary powers to ensure that the motions made and issues raised before it are managed efficiently and justly[,]" including the authority to award attorney's fees. GE Capital Mortgage v. Asbill (In re Asbill), C/A No. 3:99-0773-19, slip op. at 3–4 (D.S.C. Feb. 23, 2000).

As an initial matter, to determine if an award of attorney's fees under § 105(a) is appropriate, the Court must determine the conclusive effect of the confirmed Plan in this case.

*Violations of the Confirmed Plan*

Debtor alleges that FedLoan Servicing is bound by her confirmed Plan and has violated the terms of the Plan under § 1327 and the Supreme Court's holding in United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 130 1367, 176 L.Ed.2d 158 (2010). Section 1327 of the Bankruptcy Code provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted or has rejected the plan." The Supreme Court in Espinosa held that a confirmed plan is a binding final judgment, which generally stands "'in the way of [a party] challenging [the plan's] enforceability.'" Id. at 269, 130 S. Ct. at 1376 (quoting Travelers Indemnity Co. v. Bailey, 557 U.S. 137, 140, 129 S.Ct. 2195, 2198, 174 L.Ed.2d (2009)). In Espinosa, the Supreme Court, addressing a plan that contained a legal error, determined that when there is proper service and otherwise sufficient due process, the confirmation order "remains

enforceable and binding on [the party] because the [creditor] had notice of the error and failed to object or timely appeal." Id. at 276, 129 S.Ct. at 1380. In other words, if a party was properly served with the chapter 13 plan, and that party does not object to the plan, the order confirming that plan is broadly binding on the party, regardless of whether the party agreed to that treatment and even if that treatment may otherwise constitute a legal error.

In the present matter, the Plan identifies FedLoan Servicing as the creditor or party acting for the creditor on Debtor's Loan.[16] Further, the Plan provided for Debtor to maintain her enrollment in the IDR plan and PSLF program and also provided clear instruction regarding how her loan payments should be applied. The language in the Plan regarding Debtor's Loan was clear and unequivocally applied to FedLoan Servicing. In addition, the language was highlighted to provide adequate notice of the proposed treatment of Debtor's Loan, with the applicable section header titled "Student Loans," and was the only section of the Plan that was in bold and italicized font.

The Plan was properly served on FedLoan Servicing and no party objected to confirmation.[17] The Plan was confirmed and the Confirmation Order became final as no party filed a motion to reconsider under Fed. R. Civ. P. 59 or 60 or appealed. Further, FedLoan Servicing does not dispute that it received copies of the Confirmation Order. Therefore, upon confirmation,

---

[16] On Schedule J, Debtor lists "Student Loan" as one of her expenses that she will pay directly. Debtor's Schedule E/F also indicates that FedLoan Servicing is the creditor for her student loan.

[17] At the hearing on the Motion, FedLoan Servicing raised for the first time that it records do not reflect that it received a copy of the Second Plan. However, under Fed. R. Bankr. P. 9006(e), service "by mail is complete on mailing." Debtor's certificate of service for the Second Plan indicates it was served on the address indicated for notices by FedLoan Servicing in the proof of claim for Debtor's Loan. This Court has held that mailing creates a presumption of receipt, and the party who disputes receipt must demonstrate that the document was not properly mailed. See In re De Weerd, C/A No. 16-05655-JW, slip op. at 5–6 (Bankr. D.S.C. Mar. 16, 2017). FedLoan Servicing has not raised any allegations or presented any evidence that the Second Plan was not properly mailed. Therefore, the Court must conclude from the evidence that the Second Plan was properly served on FedLoan Servicing.

11

FedLoan Servicing was bound to the terms of the Plan pursuant to § 1327 and according to the holding in Espinosa.[18] By failing to comply with the terms of the Plan, despite notice and Debtor's demand, FedLoan Servicing was in violation and contempt of the Court's Confirmation Order.[19]

Due to FedLoan Servicing's actions, Debtor was required to file the Motion to Enforce in order to compel compliance with the terms of the Plan, which resulted in her incurring additional attorney's fees and costs. As a result of the efforts of Debtor's counsel, the Motion to Enforce was settled between the parties, with the settlement recognizing the Plan's requirements of Debtor's continuing participation in the IDR plan and the PSLF program, and the proper application of all her post-petition payments to those programs. Not only did the parties agree that Debtor's Loan be treated as required by the terms of the Plan, but, in addition, they specifically anticipated and reserved Debtor's right to seek attorney's fees and costs for violations of the Plan.[20]

It does not appear that the fees and costs associated with the Motion to Enforce and this Motion would have been incurred if FedLoan Servicing has properly complied with the Plan and Confirmation Order. Therefore, the Court finds that an award of attorney's fees and costs to the

---

[18] As part of its argument at the hearing, FedLoan Servicing indicated that the Plan, on its face, violated law as it was contradictory to federal regulations regarding the servicing of student loans when the borrower has filed bankruptcy. As such, FedLoan Servicing argued that under Espinosa, the Court had a duty to not confirm the Plan, and therefore, the plan is not binding. However, the Court notes that FedLoan Servicing's own pleadings indicate that the asserted applicable regulations are conflicting, and "do not specifically identify . . . how a student loan that is subject to a pre-petition IBR plan should be administered during the course of a bankruptcy proceeding . . ." Furthermore, this Court should not be expected to know each industry's specific guidelines and regulations without it first being called to the Court's attention. Regardless, the holding in Espinosa is clear that, according to federal statute, a plan confirmed (after proper notice to the creditor and no objections filed) remains binding on the parties, even if the plan contains a legal error. Espinosa, 559 U.S. at 276, 129 S.Ct. at 1380. Therefore, this argument is without merit and overruled.

[19] The Court has also considered the factors for civil contempt as set forth by the Fourth Circuit Court of Appeals in Ashcraft v. Conoco, Inc., 218 F.3d 288 (4th Cir. 2000).

[20] It does not appear that the fees and costs associated with the Motion to Enforce would have been incurred if FedLoan Servicing had properly complied with the Confirmation Order when it was first entered.

12

Debtor is appropriate under § 105. While this holding concludes the issue, the Court will nonetheless consider the defenses raised by FedLoan Servicing in its objection.

*FedLoan Servicing's Defenses*

In its objection to the Motion and the Joint Statement of Dispute, FedLoan Servicing primarily argues two defenses for its non-compliance: (1) its contract with the DOE did not provide it with the authority to comply with the Plan and Confirmation Order, and (2) it did not act in bad faith because it was following applicable federal regulations.

*Limited Authority Defense*

FedLoan Servicing argues that it is only the servicer for Debtor's Loan on behalf of the DOE, and that the contract between it and the DOE limited the action it could take.[21] Specifically, FedLoan Servicing asserts that upon a borrower's bankruptcy filing, it is limited to the following actions: placing the loan in bankruptcy status (*i.e.* forbearance status, which defers collection activity), preparing a proof of claim, and providing any additional support needed to defend the loan against a bankruptcy discharge. In other words, FedLoan Servicing asserts that its non-compliance with the Plan and Confirmation Order should be excused because of its contract with and limited authorization from the DOE.

The Court disagrees.

First, the Court notes that, both prepetition and post-petition, FedLoan Servicing was designated and acted as the authorized representative of the DOE for purposes of servicing Debtor's Loan, communicating with Debtor, and managing and applying the student loan payments. It further appears from FedLoan Servicing's July 27 and August 30, 2016 letters that it made determinations, in fact incorrect determinations, regarding Debtor's qualification for her

---

[21] A copy of this contract was admitted into evidence without objection.

continued enrollment in the PSFL Program and IDR Plan. It considered Debtor disqualified because of her bankruptcy filing—even though Debtor provided for continued direct payments in the confirmed Plan in an effort to keep current on her loans.[22]

A review of the contract between the DOE and FedLoan Servicing demonstrates that FedLoan Servicing's responsibilities included among other things to: (1) "respond to written and email questions and requests timely and accurately[;]" (2) "respond and resolve customer complaints; and create and execute a plan to escalate complaints to [the DOE] and the Ombudsman[;]" and (3) "provide a means for [DOE] to make a final determination on eligibility of borrowers for entitlements, such as discharge due to Closed School, Death, etc., and compromise offers." See FedLoan Servicing Ex. 1, Servicing Contract at Attachment A-2, p. 11–12.

Furthermore, a review of FedLoan Servicing's internal bankruptcy procedural guides shows that FedLoan Servicing reviews all of the bankruptcy documents filed in a case on behalf of the DOE, including both initial and amended chapter 13 plans to determine if the plan includes "any objectionable language (such as student loan dischargeability) toward [FedLoan Servicing and the DOE] . . . ."[23]

In the Court's view, the contract and guides presented by FedLoan Servicing indicates that it had sufficient authority to comply with the requirements of the Plan and Confirmation Order or ensure that the DOE provided it with the necessary authority or instruction to ensure compliance.

---

[22] There may also be a substantial question whether FedLoan Servicing's action on behalf of the DOE discriminated against Debtor in violation of 11 U.S.C. § 525(a) or (c). See 4 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 525.02 (16th ed. rev. 2016) (noting that "the list of discriminatory acts that is included in section 525(a) is not meant to be exhaustive" and indicating that "[p]erhaps the clearest and most easily detectable type of discrimination prohibited by section 525 is discrimination based upon the commencement of the bankruptcy case itself" as it "obviously frustrates the purpose of Congress to make the fresh start or reorganization benefits provided by the Code freely available to debtors who may need them").

[23] The guides provided to the Court do not outline what is objectionable language.

Regardless, upon its receipt of the Plan, if FedLoan Servicing felt unable to comply, it should have objected. It did not. Nor was there any evidence that it reported the Plan's provisions to the DOE for action. Instead, FedLoan Servicing seeks immunity due to the alleged insufficiencies in its own servicing contract and asserts that its hands were tied. To accept FedLoan Servicing's arguments would allow it and other similarly situated creditors or parties-in-interest to escape the consequences of a duly noticed confirmed plan and § 1327 by simply limiting its or its agents' responsibility. As a matter of statutory construction and public policy, such a defense cannot be accepted.[24]

*Bad Faith*

FedLoan Servicing also alleges that an award of attorney's fees is not appropriate because it asserts that it did not act in bad faith as it believed it was following federal regulations when it did not comply with the confirmed Plan and Confirmation Order.

As an initial matter, the Court finds that bad faith is not a requirement for the Court to take action pursuant to § 105.[25] Section 105 provides a sweeping grant of authority to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy

---

[24] When a court orders an agent of an entity to take certain actions, the agent who has notice of the court's order may be held in contempt of court if the agent violates the order. See 17 C.J.S. Contempt § 57 (Dec. 2017 update) ("It is usual, in an order directed against a corporation, to lay the restraint or command, not only on the corporation itself, but also on its officers, agents, and servants, so that in the case of its violation not only the corporation itself is amendable to punishment, but also its officers, agents and servants, whether or not parties to the proceeding, provided they have knowledge of the terms of the order and disobey it willfully.").

[25] FedLoan Servicing cites to McGahern v. 1st Citizens Bank & Trust Co. (In re Weiss), 111 F.3d 1159 (4th Cir. 1997) for support of its arugment that the Court must find bad faith prior to awarding attorney's fees under § 105. However, in Weiss, the court addresses an award of attorney's fees under its inherent authority to regulate the litigants that appear before it, not a bankruptcy court's statutory authority under § 105. See Hardee v. Mitchell (In re Hardee), C/A No. 96-1968, slip op., 1998 WL 766699 at *3 (4th Cir. Oct. 20, 1998) (unpublished) (noting that bankruptcy courts have several avenues, in addition to "the inherent power to regulate litigants' behavior," for the authority to sanction, including the court's authority under § 105(a) as recognized in In re Walters, 868 F.2d 665, 670 (4th Cir. 1989)).

Code, including ensuring that parties comply with the terms of a confirmed chapter 13 plan under § 1327(a), and is not limited to bad faith conduct.

Secondly, the regulation on which FedLoan Servicing relies, 34 C.F.R. § 682.402(f)(2), does not appear to limit FedLoan Servicing or the DOE from complying with the terms of a confirmed chapter 13 plan or otherwise insulate it from respecting the Court's orders. This section of the federal regulations indicates that "[i]f the lender is notified that a borrower has filed a petition for relief in bankruptcy, the lender must immediately suspend any collection efforts <u>outside</u> the bankruptcy proceeding against the borrower . . . ."[26] 34 C.F.R. § 682.402(f)(2) (2017) (emphasis added). First, the Court notes that direct payments made pursuant to a confirmed plan are part of the bankruptcy proceeding. See In re Dowey, C/A No. 12-02002-JW, slip op. at 8 (Bankr. D.S.C. Feb. 9, 2017) (holding that post-petition payments made directly to a mortgage creditor that were included in a chapter 13 plan were payments under the plan). Second, the plain reading of this regulation does not prevent the acceptance and application of payments pursuant to the specific terms of a confirmed chapter 13 plan.[27]

The fallacy of FedLoan Servicing's argument is demonstrated by a portion of its objection:

> An inherent conflict exists within the regulations themselves, and between the regulations and the Bankruptcy Code, that suggests that a borrower cannot be both in bankruptcy and an [IDR] repayment plan at the same time. The federal regulations regarding [IDR] do not mesh with the provisions of Chapter 13 regarding the proposal and confirmation of a Chapter 13 plan, and the regulatory agencies have not taken appropriate steps to specifically consider how [IDR] plans should be treated in bankruptcy.

---

[26] It appears to the Court that the purpose of this regulation is to prevent possible violations of the automatic stay under § 362 due to affirmative demands for payment or other violation activity after a bankruptcy case is filed, rather than to indicate a policy that all student loans in which the borrower is in bankruptcy must be placed in an administrative forbearance for the entirety of the bankruptcy case, regardless of the terms of a confirmed plan.

[27] Certainly, by the filing of a proof of claim, FedLoan Servicing requested and expected payments to be made on Debtor's Loan after confirmation.

16

> Under Espinosa, the [] Plan is not binding on DOE because the [] Plan contained provisions that were contrary to the existing federal regulations that govern a loan such as [Debtor's] Loan that was in [IDR] pre-petition.

FedLoan Servicing Objection at 17, Oct. 19, 2017, ECF No. 56.

The language of § 1327 and the holding in Espinosa provide the opposite.[28] Furthermore, FedLoan Servicing's agreement in the Consent Order dated August 29, 2017 to allow Debtor to continue under the PSLF Program and IDR Plan from the petition date is directly contrary to this argument.

Under the circumstances of this case, it is necessary and appropriate for the Court to award Debtor's attorney's fees so as to enforce and implement its orders and to prevent an abuse of process.

### *Amount of Attorney's Fees and Costs*

Debtor's attorneys submitted to the Court the time records in this matter, indicating attorney's fees and costs in the amount of $22,317.30. These fees include the time counsel spent contacting FedLoan Servicing to enforce the Plan and Confirmation Order through the filing of the Motion to Enforce and Motion, negotiating settlements for the motions, preparing for and attending the hearing on the Motion, and other related services. FedLoan Servicing did not challenge the amount of the Debtor's counsel's fees and costs, the rates charged or the nature and extent of services in its objection or the joint statement of dispute.[29] Based on a review of the time

---

[28] In addressing a Fed. R. Civ. P. 60(b)(4) motion to void a confirmed plan, the United States Supreme Court in Espinosa emphasized the binding effect of a confirmed chapter 13 plan after notice and an opportunity to object: "Where, as here, a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate, and the party's failure to avail itself of that opportunity will not justify Rule 60(b)(4) relief." Espinosa, 559 U.S. at 276, 130 S.Ct. at 1376.

[29] At the hearing, FedLoan Servicing briefly argued that attorney's fees should not be awarded for the failure to comply with the First Plan because the language of that plan was too general, and did not specifically mention the PSLF Program and IDR Plan. However, that argument was not made in its written objection to the Motion, nor was it set forth or preserved in the Joint Statement of Dispute filed according to Chambers Guidelines. The Chambers

records of Debtor's counsel, the Court finds that the rate of Debtor's counsel, the number of hours spent, and the costs asserted to be reasonable. In making this determination, the Court considered the guiding factors in determining a reasonable attorney's fee award under the precedent set by the Court of Appeals for the Fourth Circuit.[30] See Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978) (setting forth a twelve-factor test for the court to consider whether an attorney's fee award is reasonable).

As Debtor has reached a settlement with the DOE for payment of $6,000.00 in attorney's fees and costs in this matter, the Court finds that the award of attorney's fees and costs against

---

Guidelines prohibit a party submitting a Joint Statement of Dispute from reserving the right to materially alter or supplement the Joint Statement, and binds them to the positions and disclosures contained therein.

In addition, according to the evidence presented at the hearing, it appears that FedLoan Servicing did not apply Debtor's direct payments referenced by the First Plan because it held an erroneous belief that the filing of the bankruptcy case disqualified Debtor from continuance in and qualification for the PSLF Program and IDR Plan until "the bankruptcy concludes." See Debtor Ex. 3, FedLoan Servicing Letter dated Aug. 30, 2016 at 2; Debtor Ex. 6, American Education Services Letter dated June 15, 2017 at 1.

[30] The following factors under Barber favor a finding that counsel for the Debtor's attorney's fees and costs are reasonable:

(1) The time and labor expended: This was a prolonged matter that took more than a year to resolve between the parties.
(2) The novelty and difficulty of the questions raised: This matter presented the violation of a confirmation order in the context of student loan debt, which has not been previously presented to this Court.
(3) The customary fee for like work: The Court finds that counsel for the Debtor's fee is a customary rate for litigation within a chapter 13 consumer bankruptcy case.
(4) The time limitations imposed by the circumstances: Because of the urgency to continue Debtor's enrollment in her IDR plan and PSLF Program, Debtor' counsel was under certain time limitations to seek the relief sought by the Motion to Enforce.
(5) The amount in controversy and the results obtained: Debtor's counsel was successful in obtaining the relief sought in the Motion to Enforce as reflected by the terms of the settlement between the parties.
(6) The experience, reputation and ability of the attorney: The Court finds Debtor's counsel to have significant experience and ability and an excellent reputation among the bar.
(7) Attorney's fees awarded in similar cases: In reviewing this Court's prior orders awarding attorney's fees for a creditor's violation of confirmation orders, the fees requested by Debtor's counsel are on par with the fees awarded in those matters.

As to the remaining factors, the Court finds that those factors do not weigh against the Court's finding that the attorney's fees and costs requested by Debtor's counsel are reasonable.

FedLoan Servicing should be reduced by this amount. Therefore, the Court hereby orders that FedLoan Servicing shall pay $16,317.30 in attorney's fees and costs to Debtor as a result of FedLoan Servicing 's failure to comply with the terms of the Plan and Confirmation Order.

## CONCLUSION

The Court hereby orders FedLoan Servicing to pay $16,317.30 in attorney's fees and costs to Debtor. FedLoan Servicing shall make payment of this amount to Debtor's counsel and file a certification of compliance with this Order (including proof of payment) no later than 14 days after the entry of this Order.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
February 2, 2018

**FILED BY THE COURT
02/02/2018**



Entered: 02/02/2018

US Bankruptcy Judge
District of South Carolina